IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| EVELYN SICAN, individually and as Administrator of the Estate of LUCIANO SICAN-SOLOMAN, KIMBERLY ACOSTA, LUIS SICAN, JASMINE SICAN, and GLENDA SICAN,<br><br>Plaintiffs,<br><br>v.<br><br>JBS S.A., JBS USA FOOD COMPANY, SWIFT PORK COMPANY, JBS LIVE PORK LLC, JOHN DOES 1–3, and JOHN DOES 4–7,<br><br>Defendants. | No. 4:22-cv-00180-RGE-HCA<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

**I.    INTRODUCTION**

Plaintiffs Evelyn Sican—individually and as Administrator of the Estate of Luciano Sican-Soloman, Kimberly Acosta, Luis Sican, Jasmine Sican, and Glenda Sican sue Defendants JBS S.A., JBS USA Food Company, Swift Pork Company, JBS Live Pork LLC, John Does 1–3, and John Does 4–7.[1] Plaintiffs allege Sican-Soloman contracted COVID-19 at the JBS meat processing plant where he worked in Ottumwa, Iowa, and he died from complications from the virus. *See* Compl. 1–3, ECF No. 1. Plaintiffs allege the plant is owned, supervised, and/or controlled by JBS S.A., JBS USA Food Company, Swift Pork Company, JBS Live Pork LLC, and John Does 1–3. *Id.* at 2. Plaintiffs bring claims for negligence (Counts I and II), fraudulent misrepresentation (Count III), wrongful death (Count IV), and loss of consortium (Count VI) against these

---

[1] Plaintiffs allege John Does 1–3 are employees of JBS S.A., JBS USA Food Company, Swift Pork Company, and/or JBS Live Pork, LLC. Compl. at 6, ECF No. 1. Plaintiffs allege John Does 4–7 are supervisors at the Ottumwa, Iowa JBS plant. *Id.*

Defendants.[2] ECF No. 1 at 23–32, 34.

Defendants move to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mot. Dismiss, ECF No. 15; Defs.' Br. Supp. Mot. Dismiss, ECF No. 15-1. Defendants first argue Plaintiffs' claims are preempted by the Federal Meat Inspection Act, 21 U.S.C. § 678. ECF No. 15-1 at 4–9. Defendants next argue Plaintiffs' claims are foreclosed by the exclusivity provision of the Iowa Workers' Compensation Act, Iowa Code § 85.20. *Id.* at 10–16. As explained below, Plaintiffs' claims are not preempted by the Federal Meat Inspection Act. Plaintiffs' claims are, however, subject to the exclusivity provision of the Iowa Workers' Compensation Act. Therefore, the Court lacks subject matter jurisdiction and grants Defendants' motion to dismiss.

## II.   BACKGROUND

The Court accepts the facts set forth in the complaint as true for the purpose of analyzing the motion to dismiss. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010).

The first known case of COVID-19 in the United States was reported on January 21, 2020. ECF No. 1 at 8. On January 31, 2020, the World Health Organization declared COVID-19 a "public health emergency." *Id.* Beginning March 9, 2020, the Centers for Disease Control and the

---

[2] Plaintiffs withdrew one count for gross negligence (Count V) against John Does 4–7 in response to the Court's Order to Show Cause, ECF No. 6. *See* Pls.' Response Order to Show Cause 2, ECF No. 7; *see also* ECF No. 1 at 33–34. The remaining counts are alleged against the "JBS Defendants." *See* ECF No. 1 at 23–32, 34. Plaintiffs offer two conflicting definitions of "JBS Defendants." Plaintiffs first define "JBS Defendants" as JBS S.A., JBS USA Food Company, Swift Pork Company, JBS Live Pork LLC, and John Does 1–3. *Id.* at 2. Later in their complaint, Plaintiffs define "JBS Defendants" as JBS S.A., JBS USA Food Company, Swift Pork Company, JBS Live Pork LLC, John Does 1–3, and John Does 4–7. *Id.* at 7. The Court understands Plaintiffs' definition of "JBS Defendants" to exclude John Does 4–7. This interpretation is consistent with Plaintiffs' response to the Court's order to show cause. *See* ECF No. 7 at 2 (noting Plaintiffs' "abandon[ed]" Count V against John Does 4–7 because "presumably one or more of these persons are citizens of Iowa."). It also comports with Defendants' understanding. *See* Defs.' Mot. Dismiss ¶ 5, ECF No. 15 (noting Plaintiffs responded to the Court's show cause order by withdrawing the count "against nondiverse parties."). Accordingly, "Defendants" in this order refers to: JBS S.A., JBS USA Food Company, Swift Pork Company, JBS Live Pork LLC, and John Does 1–3.

2

Occupational Safety and Health Administration began issuing public health guidelines for employees and employers. *Id.* The guidelines from the Occupational Safety and Health Administration recommended employers provide personal protective equipment to workers and encourage workers to stay home if they are sick. *Id.* at 8, 12–13. On April 23, 2020, the Mexican Consulate of Omaha, Nebraska emailed a JBS human resources employee expressing concern over the lack of COVID-19 precautions at the company's Iowa meatpacking plants. *Id.* at 18.

The complaint alleges that despite the OSHA guidelines and the concerns expressed by the Mexican government, Defendants maintained "strict attendance requirements" that penalized employees who missed work due to illness. *See id.* at 9, 11–12. Defendants also failed to provide sufficient personal protective equipment to employees and instructed employees not to wear masks. *Id.* at 13. Defendants did not enforce any social distancing policies and required employees to work in close proximity to one another. *Id.* at 2, 12–13. Defendants did not require employees experiencing COVID-19 symptoms to report their potential illness or stay home from work. *Id.* at 15. Nor did Defendants test and monitor employees exposed to COVID-19 at the workplace. *See id.* at 2, 13.

Defendants employed Sican-Soloman at a meatpacking plant in Ottumwa, Iowa. *Id.* at 2. In the spring of 2020, several of Sican-Soloman's co-workers contracted COVID-19. *See id.* at 14. Sican-Soloman worked in close proximity to these workers during the period in which they became infected with COVID-19. *Id.* at 14. Defendants knew these employees had contracted COVID-19, but never informed Sican-Soloman that he had been exposed to the virus. *Id.* Sican-Soloman tested positive for COVID-19 on May 6, 2020. *Id.* at 21. He died from complications caused by COVID-19 on May 28, 2020. *Id.* at 1, 21.

On May 27, 2022, Plaintiffs filed suit against Defendants. ECF No. 1. Defendants move to dismiss all claims, arguing Plaintiffs' claims are preempted by the Federal Meat Inspection Act

and subject to the exclusive remedies provision of the Iowa Workers' Compensation Act. ECF No. 15-1 at 4–16. The parties did not request oral argument, and the Court declines to order it, finding the parties' briefing adequately presents the issues. *See* Fed. R. Civ. P. 78(b); LR 7(c). Having considered the parties' briefing and applicable law, the Court grants Defendants' motion to dismiss.

Additional facts are set forth below as necessary.

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). The Court must accept as true all factual allegations in the complaint, but not its legal conclusions. *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555–56). "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012).

A plausible claim for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are 'merely consistent

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## IV. DISCUSSION

### A. Federal Meat Inspection Act Preemption

Plaintiffs bring five counts against Defendants: negligence (Counts I and II); fraudulent misrepresentation (Count III); wrongful death (Count IV); and loss of consortium (Count VI). ECF No. 1 at 22–32, 34. Defendants contend each claim is preempted by the Federal Meat Inspection Act. ECF No. 15-1 at 4–9. Plaintiffs disagree, arguing their claims do not fall within the scope of the Federal Meat Inspection Act's preemption clause. *See* Pls.' Br. Supp. Response Defs.' Mot. Dismiss 10–13, ECF No. 18.

The Federal Meat Inspection Act "regulates the inspection, handling, and slaughter of livestock for human consumption." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 455 (2012). The Act "regulates a broad range of activities at slaughterhouses to ensure both safety of meat and humane handling of animals." *Id.* at 455. "The Department of Agriculture's Food Safety and Inspection Service (FSIS) has responsibility for administering the [Federal Meat Inspection Act] to promote its dual goals of safe meat and humane slaughter." *Id.* at 456. "Over the years, the [Food Safety and Inspection Service] has issued extensive regulations to govern the inspection of animals and meat, as well as other aspects of slaughterhouses' operations and facilities." *Id.* (citing 9 C.F.R. § 300.1 *et seq.* (2011)).

The Act's preemption clause states: "Requirements within the scope of this chapter with respect to premises, facilities and operations of any establishment at which inspection is provided under [the Act], which are in addition to, or different than those made under this chapter may not

5

be imposed by any State . . . ." 21 U.S.C. § 678. The Federal Meat Inspection Act's "preemption clause sweeps widely." *Harris*, 565 U.S. at 459. It "prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the Act and concern a slaughterhouse's facilities or operations." *Id.* at 459–60. A state requirement falls within the scope of Federal Meat Inspection Act preemption if the Food Safety and Inspection Service "could issue regulations under the [Act] . . . mandating" the requirement. *Id.* at 466.

"Although the [Federal Meat Inspection Act] preempts much state law involving slaughterhouses, it [] leaves some room for the States to regulate." *Id.* at 467 n.10. The Act's preemption clause "includes a saving clause, which states that the Act 'shall not preclude any State . . . from making requirement[s] or taking other action, consistent with this [Act], with respect to any other matters regulated under this [Act].'" *Id.* at 458 n.3 (citing 21 U.S.C. § 678) (alterations in original). This saving clause "provides that States may regulate slaughterhouses as to other matters, not addressed in the express preemption clause, as long as those laws are consistent with the [Federal Meat Inspection Act]." *Id.* at 467 n.10 (internal quotation marks omitted). "[S]tate laws of general application," such as workplace safety regulations and building codes, are typically not preempted by the Federal Meat Inspection Act. *See id.* States may also "exact civil or criminal penalties for animal cruelty and other conduct that violates the Federal Meat Inspection Act" without running afoul of preemption. *Id.* (citing *Bates v. Dow Agrosciences L.L.C.*, 554 U.S. 431, 447 (2005)).

The parties dispute whether Plaintiffs' allegations fall within the scope of the Federal Meat Inspection Act's preemption clause. Defendants argue Plaintiffs' allegations are within the scope of the Act because they "touch upon issues" for which the Food Safety and Inspection Service has issued regulations. ECF No. 15-1 at 8. Defendants identify at least three federal regulations the Food Safety and Inspection Service has promulgated concerning "infectious diseases." *See id.* at

6

7–8 (citing 9 C.F.R. §§ 416.5(c), 415.5(b), 381.45). Defendants argue Plaintiffs' claims seek to impose "additional and/or different requirements" to these existing regulations. *Id.* at 9. Defendants argue Plaintiffs' allegations regarding Defendants' failure to take adequate measures to reduce the spread of COVID-19 seek to impose requirements on slaughterhouses that "go beyond the requirements issued by" the Food Safety and Inspection Service. *Id.* at 23–30. As such, Defendants argue Plaintiffs' claims are preempted by the Act. *Id.*

Plaintiffs, in response, argue their claims do not fall within the scope of the Act's preemption clause. *See* ECF No. 18 at 10–13. Plaintiffs contend their claims are not preempted because the Act "does not address anything related to workplace safety or virus control measures." *Id.* at 12. Plaintiffs rely on two cases from the Northern District of Iowa to support their argument. *See id.* at 11–13 (citing *Buljic v. Tyson Foods, Inc.*, No. 20-CV-2055-LRR, 2020 WL 13042580 (N.D. Iowa Dec. 28, 2020); *Fernandez v. Tyson Foods, Inc.*, 509 F. Supp. 3d 1064 (N.D. Iowa 2020)). Plaintiffs maintain these cases were affirmed by the Eighth Circuit Court of Appeals and are binding on the Court's analysis in the present case. *Id.* at 13.

In both *Buljic* and *Fernandez*, the plaintiffs brought claims for gross negligence and fraudulent misrepresentation on behalf of employees who died after allegedly contracting COVID-19 at Tyson meatpacking facilities. *See Buljic*, 2020 WL 13042580, at *2; *Fernandez*, 509 F. Supp. 3d at 1069–72. Tyson argued the plaintiffs' claims were preempted by the Federal Meat Inspection Act. *See Buljic*, 2020 WL 13042580, at *9; *Fernandez*, 509 F. Supp. 3d at 1077–78. Tyson—relying on several of the same regulations identified by Defendants here—argued the plaintiffs' allegations fell within the scope of the Federal Meat Inspection Act. *See Buljic*, 2020 WL 13042580, at *15 (citing Defs.' Resist. Pl.'s Mot. Remand 16, *Fernandez v. Tyson Foods, Inc.*, No. 6:20-cv-02079-LRR-KEM (N.D. Iowa Nov. 16, 2020), ECF No. 31 (citing 9 C.F.R. §§ 416.5(c), 416.5(b), 381.36(f)(1)(vi))); *Fernandez*, 509 F. Supp. 3d at 1083 (citing

7

same). The Northern District of Iowa was unconvinced. *See Buljic*, 2020 WL 13042580, at *15; *Fernandez*, 509 F. Supp. 3d at 1083. In both cases, the court found it "difficult to see how these regulations relate to the tort claims alleged in Plaintiff's Petition or the issues raised by the coronavirus pandemic." *Buljic*, 2020 WL 13042580, at *15; *Fernandez*, 509 F. Supp. 3d at 1083. The Eighth Circuit affirmed the *Fernandez* and *Buljic* decisions on other grounds and did not address Federal Meat Inspection Act preemption. *See Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 742 (8th Cir. 2021) (finding case not eligible for removal under federal officer removal statute).

Although *Buljic* and *Fernandez* are not binding precedent on this Court, as Plaintiffs suggest, *see* ECF No. 18 at 13, the Court finds its sister court's analysis persuasive. Here, as in both *Buljic* and *Fernandez,* Plaintiffs' allegations do not "relate" to the federal regulations identified by Defendants. *Cf. Buljic*, 2020 WL 13042580, at *15; *Fernandez*, 509 F. Supp. 3d at 1083; *see also* ECF No. 15-1 at 7–8. Defendants' cited regulations govern food safety and product adulteration, not the spread of disease among workers. *See* 9 C.F.R. § 416.5(c) ("Any person who has or appears to have an infectious disease, open lesion, including boils, sores, or infected wounds, or any other abnormal source of microbial contamination, must be excluded from any operations which could result in *product adulteration* and the creation of insanitary conditions until the condition is corrected.") (emphasis added); *see also id.* § 416.5(b) ("[G]arments must be changed during the day as often as necessary to prevent *adulteration of product* and the creation of insanitary conditions.") (emphasis added).[3] Plaintiffs' claims do not seek to impose any requirements in

---

[3] Defendants also cite 9 C.F.R. § 381.45 as a regulation promulgated by the Food Safety and Inspection Service regarding disease control. ECF No. 15-1 at 8. Section 381.45 provides: "Each establishment that participates in the New Poultry Inspection System (NPIS) shall submit on an annual basis an attestation . . . that it maintains a program to monitor and document any work-related conditions of establishment workers, and that the program includes . . . [p]olicies to encourage early reporting of symptoms of injuries and illnesses . . . ." 9 C.F.R. § 381.45. As of June 2022, 163 poultry plants had converted to the New Poultry Inspection Plan. *See Modernization of Poultry Slaughter Inspection*, U.S. Dep't Agric. (June 9, 2022), https://www.fsis.usda.gov/inspection/inspection-programs/inspection-poultry-products/modernization-poultry

8

addition to or different from those already promulgated by the Food Safety and Inspection Service. *Cf. Harris*, 565 U.S. at 459.

Defendants attempt to distinguish *Buljic* and *Fernandez* with respect to procedural posture. Defs.' Reply Br. Supp. Defs.' Mot. Dismiss 2, ECF No 22. Both cases were decided on motion to remand. *See Buljic*, 2020 WL 13042580, at *1; *Fernandez*, 509 F. Supp. 3d at 1068. Defendants instead point to two cases decided at the motion to dismiss stage finding the Federal Meat Inspection Act preempted state common law tort claims. ECF No. 22 at 3 n.2; ECF No. 15-1 at 5 (citing *Fields v. Tyson Foods, Inc.*, 561 F. Supp. 3d 717 (E.D. Tex. 2021), *overruled on other grounds by Fields v. Brown*, No. 21-40818, 2022 WL 4990258 (5th Cir. Oct. 3, 2022)); *Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382 (N.D. Tex. 2022)). The Court finds these decisions unpersuasive. Neither Defendants nor the cases they rely on address the Federal Meat Inspection Act's saving clause. The *Johnson* court found the Food Safety and Inspection Service has already issued regulations that govern sanitation, personal protective equipment, and infectious disease. *Johnson*, 580 F. Supp. 3d at 388. But the *Johnson* court failed to consider whether a state tort law imposing a general penalty for negligence, for example, is consistent with Federal Meat Inspection Act's saving clause. *See Everhard v. Tyson Foods, Inc.*, No. 21-CV-4002-LRR, 2022 WL 16545120, at *9–10 (N.D. Iowa Sept. 22, 2022) (citing *Harris*, 565 U.S. at 467 n.10) (discussing *Johnson*, 580 F. Supp. 3d at 388). The *Fields* court's analysis similarly failed to recognize that state law penalties may be consistent with the Federal Meat Inspection Act. *See id.* at *10 (discussing *Fields*, 561 F. Supp. 3d at 720).

Defendants have failed to demonstrate Plaintiffs' allegations fall within the scope of the Federal Meat Inspection Act and that Plaintiffs' state law claims are not consistent with

---

-slaughter. Defendants do not state whether the Ottumwa plant has converted to the New Poultry Inspection Plan. Without this information, the Court cannot assess whether Plaintiffs' claims would impose additional or different requirements to those already required by § 381.45.

9

the Act's saving clause. *Cf. id.*; *Simmons v. Tyson Foods, Inc. et al.*, No. 21-CV-2036-LRR, 2022 WL 4367200, at *11 (N.D. Iowa Aug. 23, 2022). Plaintiffs' allegations do not fall within the scope of the Federal Meat Inspection Act's preemption clause and are not preempted by the Act. Accordingly, dismissal on the basis of Federal Meat Inspection Act preemption is denied.

### B. Iowa Workers' Compensation Act Exclusivity

Defendants next argue Plaintiffs' claims are foreclosed by the exclusivity provision of the Iowa Workers' Compensation Act. ECF No. 15-1 at 10–16; ECF No. 22 at 4–6. The exclusivity provision of the Iowa Workers' Compensation Act provides:

> The rights and remedies provided in this chapter . . . on account of injury, occupational disease, or occupational hearing loss for which benefits under this chapter . . . are recoverable, shall be the exclusive and only rights and remedies of the employee . . . the [employee's] personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury, occupational disease, or occupational hearing loss against any of the following:
> 1. Against the employee's employer.
> 2. Against any other employee of such employer, provided that such injury, occupational disease, or occupational hearing loss arises out of and in the course of such employment and is not caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another.

Iowa Code § 85.20.

Iowa law sets forth two workers' compensation schemes: one for injuries and one for occupational diseases. *IBP, Inc. v. Burress*, 779 N.W.2d 210, 214 (Iowa 2010). For an "injury" to qualify for workers' compensation benefits, "the employee must demonstrate (1) the claimant suffered a personal injury, (2) the claimant and the respondent had an employer-employee relationship, (3) the injury arose out of the employment, and (4) the injury arose in the course of the employment." *Id.* (quoting *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 220 (Iowa 2006)) (internal quotation marks omitted). To recover for an "occupational disease," "the disease must be causally related to the exposure to harmful conditions of the field of employment," and "those harmful conditions must be more prevalent in the employment concerned than in everyday life or in other

occupations." *Id.* (quoting *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 190 (Iowa 1980)). The Iowa Workers' Compensation Act "is intended to be the exclusive and sole remedy for workers who are injured on the job." *Cincinnati Ins. Cos. v. Kirk*, 801 N.W.2d 856, 859 (Iowa Ct. App. 2011).

The Court addresses each of Plaintiffs' claims—negligence, fraudulent misrepresentation, wrongful death, and loss of consortium—in turn, and determines each claim is subject to workers' compensation exclusivity. The Court thus lacks subject matter jurisdiction over Plaintiffs' claims. *See id.* at 859; *accord Mielke v. Ashland, Inc.*, No. 4:05-CV-88, 2005 WL 8157992, at *2–4 (S.D. Iowa July 29, 2005). Accordingly, Defendants' motion to dismiss is granted.

1. **Negligence (Counts I and II)**

Plaintiffs bring one count of negligence against Swift Pork Company (Count I) and another count of negligence against JBS S.A., JBS USA Food Company, Swift Pork Company, JBS Live Pork, LLC, and John Does 1–3 (Count II). ECF No. 1 at 22–30. Plaintiffs argue Defendants failed to implement adequate safety measures to reduce the risk of contracting COVID-19 at the plant. *See id.* Defendants argue Plaintiffs' negligence counts are barred by the exclusivity provision of the Iowa Workers' Compensation Act. ECF No. 15-1 at 10–11.

Plaintiffs acknowledge the Iowa Workers' Compensation Act bars recovery for negligence claims. *See* ECF No. 18 at 14. However, Plaintiffs contend Sican-Soloman's alleged harm of contracting COVID-19 at his workplace does not qualify as an "injury" or an "occupational disease" under the Iowa Workers' Compensation Act. *Id.* at 13–14. Plaintiffs deny contracting COVID-19 is an "injury" under Iowa law because Iowa Code § 85.61(4)(b) states an injury "shall not include a disease." *Id.* at 14. Plaintiffs deny COVID-19 is an "occupational disease" under Iowa law because a person may contract COVID-19 inside or outside the workplace. *Id.* at 14–15.

COVID-19 is a workplace injury within the meaning of the Iowa Workers' Compensation

11

Act. Iowa Code chapter 85 explains the word "injury" "shall not include a disease unless it shall result from the injury and . . . shall not include an occupational disease as defined in section 85A.8." Iowa Code § 85.61(4)(b). However, "under certain circumstances, a disease can be an injury for purposes of chapter 85." *Burress*, 779 N.W.2d at 212–215 (finding contracting brucellosis at work was injury rather than occupational disease); *see also Perkins v. HEA of Iowa, Inc.*, 651 N.W.2d 40, 44 (Iowa 2002) (finding contracting hepatitis C in course of employment was injury rather than occupational disease). Here, contracting COVID-19 at work is another circumstance where a disease constitutes an injury for purposes of workers' compensation. *Cf. Burress*, 779 N.W.2d at 212.

The Iowa Supreme Court has explained "the main distinction between an injury and an occupational disease is the method of contraction." *Id.* at 215. An occupational disease is typically contracted "through prolonged or passive exposure" to conditions in the workplace. *See id.* at 215–17. An injury, on the other hand, is contracted through "traumatic" or "unexpected or abnormal exposure to infection." *Id.* at 215, 217 (quoting *Perkins*, 651 N.W.2d at 44). Here, Plaintiffs allege Sican-Soloman contracted COVID-19 at the plant from an infected co-worker. *See* ECF No. 1 at 19–20. His infection thus resulted from a "sudden, specific incident of exposure" to a contagious co-worker. *Cf. Perkins*, 651 N.W.2d at 43. As such, it constitutes an "injury" within the meaning of the Iowa Workers' Compensation Act. Other courts to consider the issue have reached the same conclusion. *See* Ruling Mot. Dismiss 3, *Buljic v. Tyson Foods, Inc.*, Case No. LACV140521 (Iowa Dist. Ct. Black Hawk Cnty. Jan. 20, 2023) (finding contracting COVID-19 in the workplace and dying because of infection constituted workplace injury); *see also Kelley v. Home Instead Senior Care*, No. 2070092, 2022 WL 1787207, at *1 (Iowa Workers' Comp. Comm'n Feb. 17, 2022) (acknowledging contracting COVID-19 in course of employment constitutes work-related injury).

Having established contracting COVID-19 at work constitutes a workplace injury within the meaning of the Iowa Workers' Compensation Act, the Court next considers whether the injury is barred by workers' compensation exclusivity. Iowa law clearly establishes claims for negligence fall within the Iowa Workers' Compensation Act's exclusivity provision. *See Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 30 (Iowa 2005). The workers' compensation statute "supplants the common law." *Id.* As such, Iowa law "no longer recognize[s] a cause of action for negligence by an employee against the employer or co-employee." *Id.* Accordingly, the exclusivity provision of the Iowa Workers' Compensation Act forecloses Plaintiffs' negligence claims against Defendants. *Cf. id.*

The Court dismisses Count I against Swift Pork Company and Count II against JBS, JBS USA, Swift Pork, JBS Live Pork, and John Does 1–3.

### 2. Fraudulent misrepresentation (Count III)

Plaintiffs allege one count of fraudulent misrepresentation against Defendants. ECF No. 1 at 30–32. Specifically, Plaintiffs allege Defendants fraudulently misrepresented to Sican-Soloman the risk of contracting COVID-19 while working at the plant. *Id.* at 31–32. Defendants argue Plaintiffs' fraudulent misrepresentation claim fails for two reasons. ECF No. 15-1 at 11. First, Defendants argue Plaintiffs' fraudulent misrepresentation claim is foreclosed by the Iowa Workers' Compensation Act. *Id.* at 11–12. Second, Defendants argue Plaintiffs do not meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for cases involving fraud. *Id.* at 13–14. Plaintiffs do not address Defendants' workers' compensation argument. *See* ECF No. 18 at 17–19. They argue only that their allegations satisfy Federal Rule of Civil Procedure 9(b). *See id.*

Defendants contend "Iowa courts have long prevented plaintiffs from circumventing Section 85.20 by reframing an injury or occupational disease as another tort." ECF No. 15-1 at 11.

13

Defendants cite *Nelson v. Winnebago Industries, Inc.* in support of this proposition. *Id.* (citing *Nelson v. Winnebago Indus., Inc.*, 619 N.W.2d 385 (Iowa 2000)). In *Nelson*, a former employee who was injured in a workplace prank sued his employer for false imprisonment and battery. *Nelson*, 619 N.W. 2d at 386. The plaintiff argued his tort claims fell outside the Iowa Workers' Compensation Act because his claims did not "require physical injury as a condition to recovery." *Id.* at 389. The Iowa Supreme Court rejected the plaintiff's argument, holding his suit was "in essence a claim for damages covered by workers' compensation, and [thus] barred by the Act's exclusivity provision." *Id.* at 389. The *Nelson* court reasoned "[a] mere labeling of a claim for injuries as false imprisonment or battery because in some circumstances those torts may be compensable without a physical injury cannot avoid the exclusivity of workers' compensation if the gist of the claim is for bodily injury." *Id.* at 398. The court further explained that "if the essence of the action is recovery for physical injury or death . . . the action should be barred even if it can be cast in the form of a normally non-physical tort." *Id.* (internal citation and quotation marks omitted).

Other courts have since applied the *Nelson* court's reasoning to find fraudulent misrepresentation claims barred by workers' compensation exclusivity when the "gist" of the claim is bodily injury. In *Buljic*, the Iowa District Court for Black Hawk County on remand held plaintiffs' fraudulent misrepresentation claim was subject to Iowa Worker's Compensation Act exclusivity because "the gist" of plaintiffs' claim was "that each decedent was infected in the workplace with COVID-19, that they died as a result of the infection, and that each suffered a workplace injury." Ruling Mot. Dismiss at 3, Case No. LACV140521; *see also* Ruling Defs.' Mot. Dismiss 14, *Andrade v. JBS USA.*, Case No. 40-LACI011411 (Iowa Dist. Ct. Marshall Cnty. Jan. 5, 2023) (finding plaintiffs' nearly identical fraudulent misrepresentation claim "seeks damages for the same physical harm and death . . . to be addressed exclusively by the workers'

compensation statute"); *Mielke*, 2005 WL 8157992, at *2 (finding plaintiff's claim for fraudulent misrepresentation barred by workers' compensation exclusivity provision); *Wolodkewitsch v. TPI Iowa, L.L.C.*, No. 21-1293, 2022 WL 16631228, at *3 (Iowa Nov. 2, 2022) (finding plaintiff's fraud and breach of fiduciary care claims foreclosed by workers' compensation exclusivity provision).

Here, the gist of Plaintiffs' fraudulent misrepresentation claim is for bodily injury. *Cf.* Ruling Mot. Dismiss at 3, Case No. LACV140521. Plaintiffs allege Defendants fraudulently misrepresented the risk of contracting COVID-19 at the plant and that Sican-Soloman—relying on Defendants' misrepresentation—contracted COVID-19 at work and subsequently died from related complications. *See* ECF No. 1 at 1, 31–32. Plaintiffs' claim seeks recovery for the same physical injury—contracting COVID-19 at the workplace—subject to workers' compensation exclusivity. *See supra* Part IV.B.1. As such, Plaintiffs' fraudulent misrepresentation claim is also subject to workers' compensation exclusivity. *Cf. Nelson*, 619 N.W.2d at 389; *see also Kirk*, 801 N.W.2d at 863 ("[W]here a claim is predicated on the same facts as the work injury itself, simply labeling it as fraud is not sufficient to avoid the exclusivity of the [Iowa] Workers' Compensation Act."). Because Plaintiffs' fraudulent misrepresentation claim is barred by the Iowa Workers' Compensation Act, the Court does not address whether Plaintiffs' allegations are sufficient under Federal Rule of Civil Procedure 9(b).

Accordingly, the Court dismisses Count III against Defendants.

### 3. Wrongful death and survival action (Count IV)

Plaintiffs bring a wrongful death and survival action against Defendants pursuant to Iowa Code § 611.20. ECF No. 1 at 32. Section 611.20 states: "All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." Iowa Code § 611.20. Plaintiffs seek all damages for wrongful death allowable under Iowa Code

§ 633.336. ECF No. 1 at 32. Defendants contend neither § 611.20 nor § 633.336 creates an independent cause of action. *See* ECF No. 15-1 at 14. Defendants argue Plaintiffs' underlying substantive claim—negligence—is barred by the exclusive remedy provision of the Iowa Workers' Compensation Act. *Id.*

Section 611.20 "preserves whatever rights and liabilities a decedent had with respect to a cause of action at the time of his death." *Weitl v. Moes*, 311 N.W.2d 259, 270 (Iowa 1981), *overruled on other grounds by Audubon-Exira Ready Mix, Inc. v. Ill. Cent. Gulf R.R. Co.*, 335 N.W.2d 148 (Iowa 1983). Recovery for wrongful death under § 611.20 is generally allowed when the decedent would have been able to recover for the alleged wrongful act "had he survived the injury." *Egan v. Naylor*, 208 N.W.2d 915, 917 (Iowa 1973).

Plaintiffs here cannot maintain their wrongful death claim. Plaintiffs argue Sican-Soloman "could and would have" brought claims for negligence and fraudulent misrepresentation against Defendants "had he not died as a result of" complications from COVID-19. *See* ECF No. 1 at 32. However, as previously discussed, Sican-Soloman could not have brought such claims because they are barred by workers' compensation exclusivity. *See supra* Part IV.B.1–2. Plaintiffs thus fail to state a claim upon which relief may be granted.

Accordingly, the Court dismisses Count IV against Defendants.

### 4. Loss of consortium (Count VI)

Plaintiffs bring one count for loss of consortium against Defendants. ECF No. 1 at 34. Plaintiffs contend Iowa Code § 614.15 creates a separate cause of action for loss of consortium. ECF No. 18 at 16. Plaintiffs argue Evelyn Sican, as the administrator of Sican-Soloman's estate, is entitled to bring this claim on behalf of all Sican-Soloman's children and beneficiaries. *Id.* at 34. Defendants argue loss of consortium is subject to workers' compensation exclusivity. ECF No. 15-1 at 15.

16

Courts have long interpreted the exclusivity provision of the Iowa Workers' Compensation Act to bar loss of consortium claims. *See Johnson v. Farmer*, 537 N.W.2d 770, 773 (Iowa 1995) (holding loss of consortium claim brought by injured employee's husband and children was precluded by workers' compensation exclusivity). Iowa Code § 85.20 expressly states workers' compensation remedies "shall be the exclusive and only rights and remedies of the employee or student, the employee's or student's personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury." Iowa Code § 85.20. "[F]amily members of an injured or deceased employee who are not able to directly recover under the [Iowa Workers' Compensation Act] are precluded from bringing loss of consortium claims against the employer." *Grandstaff v. Hiner Equip., L.L.C.*, 96 F. Supp. 3d 919, 924 (S.D. Iowa 2015). Accordingly, Plaintiffs' loss of consortium claim is subject to workers' compensation exclusivity. *Cf. Johnson*, 537 N.W.2d at 773; *see also* Ruling Defs.' Mot. Dismiss at 14, Case No. 40-LACI011411 (holding plaintiffs' loss of consortium claim foreclosed by workers' compensation exclusivity).

The Court dismisses Count VI against Defendants.

## V. CONCLUSION

Plaintiffs' claims are not preempted by the Federal Meat Inspection Act. Plaintiffs' claims are foreclosed by the exclusivity provision of the Iowa Workers' Compensation Act. The Court lacks subject matter jurisdiction. Plaintiffs' claims must proceed before the Iowa Division of Workers' Compensation pursuant to the Iowa Workers' Compensation Act.

For the foregoing reasons, Defendants JBS S.A., JBS USA Food Company, Swift Pork Company, JBS Live Pork LLC, John Does 1–3, and John Does 4–7's Motion to Dismiss, ECF No. 15, is **GRANTED.** The case is dismissed without prejudice.

**IT IS SO ORDERED.**

Dated this 23rd day of March, 2023.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE